**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the December 8, 2007 Mayweather/Hatton Program, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RAYMOND TU, Individually, and as officer, Director, shareholder and/or principal of MAMBO SEAFOOD II, INC. d/b/a MAMBO SEAFOOD RESTAURANT a/k/a MAMBO SEAFOOD/OYSTER BAR AND GRILL, and MAMBO SEAFOOD II, INC. d/b/a MAMBO SEAFOOD RESTAURANT a/k/a MAMBO SEAFOOD/OYSTER BAR AND GRILL, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 08 C 4119 |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion for entry of default judgment and award of damages, attorneys' fees, and costs. For the reasons explained below, the Court awards the sum of $10,658.00 in statutory damages, enhanced damages, attorneys' fees, and costs, and enters a final default judgment against Defendants in that amount.

**I.     Introduction**

Plaintiff J & J Sports Productions, Inc. filed this action alleging that Defendants Raymond Tu ("Tu") and Mambo Seafood II. Inc. d/b/a Mambo Seafood Restaurant a/k/a Mambo Seafood/Oyster Bar and Grill ("Mambo") knowingly and willfully violated certain provisions of the Communications Act of 1934 ("Act") (47 U.S.C. §§ 553, 605) by unlawfully intercepting and exhibiting the Mayweather/Hatton boxing match on December 8, 2007. On September 23, 2008,

this Court entered a default judgment against Defendants and set the matter for prove-up. Plaintiff has filed a memorandum of law, affidavits, and other documents in support of its request for statutory and enhanced damages, costs, and attorneys' fees under the Act and seeks the entry of an award against Defendants Tu and Mambo.[1]  The amount of statutory damages is committed to the discretion of the Court.  In order to arrive at an appropriate sum to award as damages, the Court has reviewed analogous cases.

## II.  Analysis

The background facts of this case, except for those relating to damages, are taken from the allegations of Plaintiff's complaint and are deemed admitted as a consequence of Defendants' default.  See, *e.g.*, *Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994).  Plaintiff has established that it owned the distribution rights to the Mayweather/Hatton boxing match, which was broadcast by closed circuit television or by encrypted satellite signal.  For a fee, commercial establishments legitimately could receive an unscrambling signal, enabling them to exhibit the program to patrons pursuant to a contractual agreement with Plaintiff.

Quite understandably, Plaintiff wishes to enforce its distribution rights and to ensure that only those who have paid actually gain access to the program.  To that end, Plaintiff retains auditors to visit commercial establishments to determine whether the program is being exhibited without proper authorization.  Plaintiff here has submitted the affidavit of one such auditor, who avers that he entered Mambo at 9:20 p.m. on the night of the event in question and observed four television sets exhibiting the boxing match to approximately 50 to 75 individuals.  As a result of

---

[1] The imposition of liability is proper against both the corporate Defendant (Mambo) and the individual Defendant (Tu) because a corporate officer "'who has the ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'"  *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

Defendants' default, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain.[2] See *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

Plaintiff alleges that Defendants violated 47 U.S.C. §§ 553 and 605. However, as Plaintiff acknowledges, it may not simultaneously pursue relief under both sections of the Act, because they target two distinct types of piracy. See *United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996). Plaintiff here pursues relief under Section 605 and has established through its complaint, affidavits, and memorandum of law, combined with Defendants' default, a violation of that statute.

Under Section 605(a), a claimant may elect actual or statutory damages pursuant to Section 605(e)(3)(C)(i). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the Court.[3] Plaintiff also seeks enhanced damages for willful violations under Section 605(e)(3)(C)(ii).[4] That section permits

---

[2] While it is impossible without discovery or an admission from Defendants to determine what method Defendants used to access the satellite signal, it is logical to conclude that they must have used an illegal satellite receiver, misrepresented their business establishment as a residence, or engaged in "mirroring" by taking a legitimate receiver from a home to the business establishment in order to intercept Plaintiff's broadcast.

[3] Under Section 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a) . . . in a sum not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[4] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. See, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959-61 (E.D. Wis. 2001). Finally, under Section 605(e)(3)(B)(iii)[5], Plaintiff has requested an award of attorneys' fees and costs in the amount of $1,533.00.

The Court turns first to Plaintiff's request for statutory damages. As another judge in this district recently noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under [Section] 605 based on the number of patrons." *J & J Sports Production, Inc. v. Ramirez*, No. 08 C 3354, Minute Order at 1-2 (N.D. Ill. Sept. 18, 2008) (citing cases and basing award on baseline of $55 per patron); see also *Time Warner Cable*, 77 F. Supp. 2d at 489-90. Applying that sensible approach, on the date in question, the auditor observed a maximum of 75 patrons at Mambo, resulting in a total statutory award of $4,125.00.

In regard to enhanced damages, as noted above, the Court has concluded that Defendants' violation was willful within the meaning of the Act, because "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable*, 77 F. Supp. 2d at 490. The Act does not provide further guidance, but simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have looked to a number of factors, including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. See *J & J Sports*, No. 08 C

---

47 U.S.C. § 605(e)(3)(C)(ii).

[5]Section 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

3354, Minute Order at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In connection with those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense). See, *e.g.*, *Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.*, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Kingvision Pay-Per-View*, 2003 WL 548891, at *2.

The record before the Court does not establish that Defendants are repeat offenders or that they either advertised the event or collected a cover charge on the night in question. The auditor's affidavit establishes that the venue is a medium-sized one – having a capacity of approximately 150 – and that the event did not draw a full house, suggesting that Defendants made only a modest profit from the unlawful showing of the boxing match. The case therefore is analogous to *J & J Sports*, in which the court awarded $4,000 in enhanced damages, finding that amount "[c]onsistent with other courts facing similar facts." No. 08 C 3354, Minute Order at 2 (citing cases and imposing $4,000 in enhanced damages where 14 patrons were present). This Court finds the analysis in *J & J Sports* instructive, but that the circumstances here warrant a slightly larger award of enhanced damages of $5,000 in view of the larger capacity and larger actual crowd in attendance to view the wrongfully appropriated program.

Finally, the Court has reviewed the materials submitted in support of Plaintiff's request for $1,533.00 in attorneys' fees and costs and finds that amount well supported and reasonable in the circumstances.

**III. Conclusion**

For the reasons stated above, the Court enters a final default judgment for Plaintiff and against Defendants, jointly and severally, in the amount of $10,658.00.

Dated: October 29, 2008

Robert M. Dow, Jr.
United States District Judge